UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CENTURY SURETY COMPANY, | ) | Civil No. 05-CV-1548-L(LSP) |
| Plaintiff, | ) ) | **ORDER GRANTING APPLICATION FOR TEMPORARY PROTECTIVE** |
| v. | ) ) | **ORDER, RIGHT TO ATTACH ORDER AND WRIT OF** |
| 350 W.A., LLC, *et al.*, | ) ) | **ATTACHMENT [doc. #60]** |
| Defendants. | ) ) | |
| | ) | |

Century Surety Company ("Century" or "plaintiff") seeks a temporary protective order and pre-judgment attachment to secure a judgment in Century's favor to which the parties agreed. Plaintiff contends in the absence of both remedies, David Blackburn[1] ("Blackburn") and other Blackburn entities, which executed and guaranteed the stipulated judgment and the obligations attached thereto, are likely to transfer assets in avoidance of the stipulated judgment. Blackburn and 350 W.A., LLC ("350")(collectively "defendants") oppose Century's application. The application has been fully briefed. The Court's decision is based upon the following discussion.

/ / /

---

[1]     The Court notes that Blackburn is not a defendant in this action; instead, he is a counterclaimant along with 350. Blackburn was a defendant in the underlying action in state court. For ease of reference, the Court will refer to both 350 and Blackburn as "defendants" in this action.

**Factual Background**

Blackburn purchased a building at 350 West Ash Street in San Diego.  Jacqueline Helleis ("Helleis") was leasing space in the building for her business, Flagship Research.  During escrow, the building sustained significant damage due to multiple flooding incidents.  Nevertheless, Blackburn completed the purchase and immediately thereafter transferred the property to 350.  Due to environmental and fire safety concerns, among other problems with the building, on May 15, 2003, Blackburn advised the building tenants he was terminating their leases.  On June 12, 2003, Helleis filed a complaint against 350 and David Blackburn in the San Diego Superior Court ("underlying action").  Ultimately the case included causes of action for breach of contract, breach of the covenant of good faith and fair dealing, breach of the covenant of quiet enjoyment, constructive eviction, nuisance, and declaratory relief.

The *Helleis* bench trial concluded on June 27, 2005.   The court dismissed the causes of action for nuisance and declaratory relief.  Blackburn was exonerated on all claims, but Helleis was successful in the remaining causes of action against 350.  The trial court awarded Helleis damages in the amount of $504,826.44, and attorneys' fees of $295,902.[2]  On July 8, 2005, 350 tendered a claim for defense and indemnity to Century.  (Complaint at 8)

Four days after the tender of a claim, the state court entered judgment against 350.  On July 27, 2005, Century sent 350 notice it would defend the company in post-judgment and appellate proceedings under a reservation of rights.  (Complaint at 8)  Century then filed the above-captioned case on August 3, 2005, to obtain a declaratory judgment and reimbursement of attorney's fees and costs.  Plaintiff seeks a declaration of its rights and duties under the policy it issued to 350, and contends it had no obligation to defend or indemnify.  (Complaint at 8)  350 filed an answer on October 3, 2005.  (Answer, doc. #8)  350 and Blackburn filed a counterclaim for declaratory relief, breach of written contract, and breach of the implied covenant of good faith and fair dealing on October 3, 2005.  (Counterclaim, doc. #9)

---

[2]      The California Court of Appeals noted that the trial court "made an arithmetic error in calculating the judgment; the correct damage total is $504,826.44."  (Plaintiff's Exh. A at 3).

1   350 filed an appeal in the underlying action.[3]   In an effort to obtain an appeal bond to

2   protect 350's assets from execution by the judgment creditor Helleis, Century and Blackburn,

3   350 and other entities[4] associated with Blackburn (the "Blackburn entities") entered into a Bond

4   Agreement whereby Century would provide, for a six-month period, collateral as security for the

5   appeal bond and after that time period expired, 350 and Blackburn would substitute their

6   collateral as security for the appeal bond.  Under the parties' Bond Agreement, in the event

7   defendants did not substitute their collateral within the six-month period, a Stipulated Judgment

8   would be entered in Century's favor against Blackburn and the Blackburn entities.

9   After the six-month period expired along with several extension of time, defendants failed

10  to provide collateral for the appeal bond.  Plaintiff eventually advised Blackburn's counsel that it

11  would be filing an application for entry of judgment – the Stipulated Judgment – in accordance

12  with the parties' Bond Agreement.  Plaintiff alleges that once notified of its intent, Blackburn

13  attempted to hide his assets by transferring multiple parcels of real property from his individual

14  or community property ownership to his personal trust.  Plaintiff asserts the transferred assets

15  had an assessed value in excess of three million dollars.

16  The California Court of Appeal affirmed the *Helleis* trial court in its entirety on July 11,

17  2007.  On September 11, 2007, the judgment creditor will have the right to collect the judgment

18  from the bonding company which will use Century's collateral unless defendants pay the

19  judgment.  Century contends that it is highly unlikely that defendants will pay the judgment or

20  substitute their own collateral prior to September 11; therefore, plaintiff seeks a prejudgment

21  writ of attachment against Blackburn and the Blackburn entities to secure the stipulated

22  judgment and to be free from the financial responsibility for defendants' liability to plaintiff in

23  the underlying *Helleis* action.

24

25  [3]   In the state court appeal, 350 claimed the trial court erred in both its interpretation and application of the lease provisions, and its finding that 350 breached the lease.  350 also

26  contended the damage award was improperly calculated and was not based on substantial evidence.

27  [4]   These entities are 350 W.A. LLC; B&H Property Systems, Inc.; 350 West Ash

28  Urban Homes, Inc.; and the David A. Blackburn Family Trust.  (Plaintiff's Exh. C, Appeal Bond Agreement at 4, ¶ 7)

**DISCUSSION**

### 1.    Legal Standard for Writ of Attachment

A writ of attachment allows a plaintiff, who has applied for an attachment, followed the statutory guidelines and established a prima facie claim to have a defendants' assets seized and held until final adjudication. *Whitehouse v. Six Corp.*, 40 Cal. App. 4th 527, 532 (1995)(citing *Randone v. Appellate Department,* 5 Cal.3d 536, 543 (1971)).  A plaintiff who suspects that the defendant has wrongfully transferred assets in order to become judgment proof may enforce its claim against the transferred property by way of a writ of attachment.  CIV. CODE § 3439.07 (a)(2), (b); *see also* SCHWARTZ AND AHART, CAL. PRACTICE GUIDE-ENFORCING JUDGMENTS AND DEBTS 1 (The Rutter Group 1994) 3:342, p. 3-70.5, and ¶ 4:96, p. 4-20.

California Code of Civil Procedure section 483.010(a), provides: "Except as otherwise provided by statute, an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorneys fees."

Prior to an attachment order being issued, the court must find (1) the claim on which the attachment is based is one on which an attachment may be issued; (2) the applicant has established the "probable validity" of the claim on which the attachment is based; (3) the attachment is not sought for a purpose other than the recovery on the claim on which the request for attachment is based; and (4) the amount to be secured by the attachment is greater than zero. CIV. PRO. CODE § 484.090.  The plaintiff bears the burden of demonstrating that the claim is one on which an attachment may be issued and the claim's probable validity.  *Id.*  Attachment requires a court to make a preliminary determination of the merits of a dispute.  *Lorber Industries v. Turbulence, Inc.,* 175 Cal. App.3d 532, 535 (1985).  A claim has "probable validity" within the meaning of the attachment statute where it is more likely than not the plaintiff will obtain a judgment against the defendant or cross-defendant on its claim. CIV. CODE § 481.190.

Statutory attachment procedures are subject to strict construction.  *Hobbs v. Weiss*, 73

05cv1548

Cal. App. 4th 76, 79 (1999)(citing *Vershbow v. Reiner,* 231 Cal. App. 3d 879, 882 (1991). "The declarations in the moving papers must contain evidentiary facts, stated 'with particularity,' and based on actual personal knowledge with all documentary evidence properly identified and authenticated." *Hobbs*, 73 Cal. App. 4th at 79-80 (citing § 482.040). "In contested applications, 'the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation.'" *Id.* at 80 (*quoting Loeb & Loeb v. Beverly Glen Music, Inc.,* 166 Cal. App. 3d 1110, 1120 (1985).

### 2. "Probable Validity"[5]

Under Code of Civil Procedure section 481.190, "[a] claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." CIV. PROC. CODE §481.190. In considering an application for right to attach order, the court must assess the sufficiency of plaintiff's evidence and weigh it against defendants' evidence on the issues presented.[6] *Loeb*, 166 Cal. App.3d at 1120.

Plaintiff contends that the Stipulated Judgment (Pl.'s Exh. D), the Bond Agreement (Pl.'s Exh. C), the Guaranty Agreements (Pl.'s Exh. E), and the Indemnity Agreements (Pl.'s Exh. F) are valid and enforceable against Blackburn, 350 and the Blackburn entities. Plaintiff notes that Blackburn and the Blackburn entities do not contend that their duly appointed representative signed the relevant contractual agreements and that each of the entities failed to perform under the agreements.[7] As discussed above, the Bond Agreement required 350 and Blackburn to provide collateral within six months of the issuance of the appeal bond in place of the collateral plaintiff had posted to secure the appeal bond. Further, the Indemnity and Guaranty

---

[5]   The Court notes that defendants do not address and therefore, concede that the claim on which the attachment is based is one on which an attachment may be issued; the attachment is not sought for a purpose other than the recovery on the claim on which the request for attachment is based; and the amount to be secured by the attachment is greater than zero. Therefore, the Court will focus on the factor of whether the applicant has established the "probable validity" of the claim on which the attachment is based. *See* Civ. Code § 484.090.

[6]   The Court has considered the arguments of the parties and evidence submitted in the present application. Further, the Court has reviewed the arguments and evidence presented by the parties in support of and in opposition to plaintiff's motions for summary judgment.

[7]   Defendants contend that their default was not voluntary. (Opp. at 5)

Agreements required Blackburn and the Blackburn entities to guarantee the obligations found in the Bond Agreement if there was a default.  Finally, plaintiff contends that Blackburn and the Blackburn entities agreed to submit to a Stipulated Judgment in the event defendants did not timely substitute their own collateral for the appeal bond.  Based on plaintiff's evidence, it has demonstrated the probable validity of its claims because defendants have defaulted on the various agreements.

### A.   Impossibility or Frustration of Purpose as Excusing Performance

But defendants contend that any default on their part was excused because of the doctrines of impossibility and/or frustration of purpose with respect to the Bond Agreement because the bonding company that plaintiff selected would not accept real property as collateral for the appeal bond.  Defendants contend plaintiff knew prior to obtaining the appeal bond that defendants planned to post real property as collateral for the appeal bond.

The doctrine of impossibility concerns situations in which performance is or becomes either illegal, physically impossible or extremely impracticable.  *See Mitchell v. Ceazan Tires,* 25 Cal.2d 45, 48 (1944).   Further, California Civil Code § 1511 sets forth causes excusing performance:

> The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate:
> . . .
> 2. When it is prevented or delayed by an irresistible, superhuman cause, or by the act of public enemies of this state or of the United States, unless the parties have expressly agreed to the contrary; . . .

CIV. CODE § 1511.

Defendants argue that the surety, selected by plaintiff, would not allow real property collateral to be used to secure the appeal bond and this is what caused defendants' default and excuses that default.  Although the surety allegedly required defendants to provide non-real property as collateral,[8] defendants cannot demonstrate that the type of collateral required for the bond  was a basic assumption of the contract, or that it caused the performance of their

---

[8]    Defendants have not provided admissible evidence to support their contention that the surety would not accept real property as collateral.

contractual obligations to be impossible. Facts that  may make performance more difficult or costly than contemplated when the agreement was executed do not constitute impossibility. *Butler v. Nepple*, 54 Cal.2d 589, 599 (1960).

Acknowledging that impossibility is unlikely to excuse defendants' performance (Opp. at 7), defendants also argue that Century's action in selecting a surety that would not accept real property as collateral frustrated their performance of the Bond Agreement.  The frustration of purpose doctrine applies when performance is possible but a supervening, fortuitous event has virtually destroyed the value of the consideration to be provided.  *Lloyd v. Murphy*, 25 Cal.2d 48, 53 (1944).  The Restatement section on frustration of purpose provides:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or circumstances indicate the contrary.

RESTATEMENT (SECOND) OF CONTRACTS § 265.  The defense of frustration of purpose "arises when a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract."  *Id.* at cmt. a; *see also Federal Leasing Consultants v. Mitchell Lipsett Co.*, 150 Cal. Rptr. 82, 84 (Cal. Ct. App. 1978) (lessor of burglar alarm system could rely on defense of frustration of purpose when, subsequent to installation of the system, the government prohibited use of that kind of system).

Plaintiff argues that defendants were not precluded from performing under the Bond Agreement because the surety would not accept real estate as collateral.  As plaintiff correctly notes, defendants have failed to offer admissible evidence that they were capable of performing if the surety had agreed to accept real estate as an acceptable form of collateral.  Further, even if defendants were capable of providing sufficient equity in real estate to support the $1.2 million bond, defendants fail to offer admissible evidence that would explain why their assets could not be converted to a form of collateral acceptable to the surety.  (Reply at 4).

Here, there was no frustration in making the contract even assuming defendants' assertions are true.  Defendants have not provided evidence to support an excuse of performance under the Bond Agreement.  Accordingly, "it is more likely than not that the plaintiff will obtain

1  a judgment against the defendant on [its] claim."  CIV. PROC. CODE §481.190.

2        **B.**    **Lack of Consideration**

3        Defendants also argue that there was no consideration for the Bond Agreement and

4  therefore, their performance was excused because plaintiff was required under the Insurance

5  Policy to provide a bond pending appeal, *i.e.,* that plaintiff obtained the appeal bond because it

6  was legally obligated to do so.  Thus, according to defendants, there could be no consideration

7  provided by plaintiff to defendants for the Bond Agreement.

8        The question of whether plaintiff was obligated under the Policy was contested at the time

9  the Bond Agreement was entered into by the parties, and remains contested as a significant part

10  of the current litigation.  As noted in the "Agreement to Procure Appeal Bond":

11      Disagreements have arisen between the Insureds and Century Surety as to whether
    Century Surety is obligated under the Policy or otherwise to procure a bond to

12      release attachments of the Insureds' assets pending appeal of the Judgment.
    *Despite their good faith disagreements on this point*, the Insureds and Century

13      Surety now wish to settle and resolve all issues pertaining to the procurement of an
    appeal bond, while reserving any and all other issues between them to resolution at

14      a later time.

15  (Plaintiff's Exh. C at 2, ¶ H (emphasis added)).  Thus, there was no determination of plaintiff's

16  obligation to provide an appeal bond when the Bond Agreement was formed.

17        Accordingly, because plaintiff provided the cost of and collateral for an appeal bond for a

18  period of six months in order for defendants to be able to avoid execution of the judgment in the

19  *Helleis* action during the appeal and to allow time for defendants to arrange to substitute their

20  collateral under the bond, there does not appear to be a failure of consideration.  Further,

21  defendants have not provided admissible evidence that the Bond Agreement lacked

22  consideration at the time of its formation.   It appears, therefore, that plaintiff will likely succeed

23  on its claim.

24                          **CONCLUSION**

25        Based on the record presented, the Court finds plaintiff has sufficiently demonstrated that

26  its claim is one on which attachment could issue, its claim has probable validity, it did not seek

27  attachment for any other reason other than to secure recovery on the claim and the amount to be

28  secured by the attachment is greater than zero.   Accordingly, plaintiff's applications for a

temporary protective order, a right to attach order and writ of attachment in the sum of $1,201,088.16 is **GRANTED**.

**IT IS SO ORDERED.**

DATED: September 7, 2007

M. James Lorenz
United States District Court Judge

COPY TO:

HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

05cv1548