1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   CENTURY SURETY COMPANY,            )   Civil No. 05-CV-1548-L(LSP)
                                        )
12                     Plaintiff,       )   **ORDER DENYING AS MOOT**
                                        )   **PLAINTIFF'S MOTION FOR**
13   v.                                 )   **SUMMARY JUDGMENT [doc. #21]**
                                        )   **GRANTING MOTION FOR**
14   350 W.A., LLC, *et al.*,           )   **SUMMARY ADJUDICATION [doc.**
                                        )   **#33]; and GRANTING MOTION FOR**
15                     Defendants.      )   **JUDGMENT [doc. #23]**
                                        )
16   _____  )
                                        )
17   AND RELATED COUNTERCLAIMS.         )
                                        )
18   _____  )

19          Century Surety Company ("Century" or "plaintiff") moves for summary judgment[1] and

20   for an order that judgment be entered in plaintiff's favor based upon an agreement for entry of a

21   stipulated judgment in the event of default under a bond agreement.  Defendant 350 W.A., LLC

22   ("350") and counterclaimant David Blackburn ("Blackburn"), oppose all of plaintiff's motions.[2]

23   _____

24          [1]      Plaintiff filed a motion for summary judgment [doc. #21] on November 20, 2007.
     Instead of withdrawing that motion, plaintiff filed a new motion for summary judgment [doc.
25   #33] that contains the arguments found in its November 20, 2007 motion along with a new
     argument.  Because the second motion for summary judgment contains all the arguments found
26   in the first-filed motion for summary judgment, the Court denies the November 2007 motion as
     being superseded and therefore, mooted by the December 19, 2007 summary judgment motion.

27          [2]      Defendant Jacqueline Helleis has not joined in plaintiff's motions or otherwise
28   opposed the motions.  Plaintiff alleges that "defendant Helleis contends Century Surety is
     obligated to satisfy the judgment against 350 W.A. in the *Helleis* action, to pay costs taxed

**Factual Background**

Blackburn purchased a commercial office building at 350 West Ash Street in San Diego. Jacqueline Helleis ("Helleis") was and had been leasing space in the building for her business, Flagship Research ("Flagship").[3]  During escrow, the building sustained significant damage due to multiple flooding incidents.  Nevertheless, Blackburn completed the purchase and immediately thereafter transferred the property to 350.  Century issued a commercial general liability policy to 350, for the 350 West Ash commercial office building on May 15, 2003.

Due to environmental and fire safety concerns, defendant determined the building to be uninhabitable.  On May 15, 2003, 350 advised the building tenants that their leases – including Flagship's lease– were being terminated.  On June 12, 2003, Helleis filed a Complaint against 350 and Blackburn in the Superior Court for the County of San Diego ("underlying action" or "*Helleis*").  The *Helleis* action included causes of action for breach of contract, breach of the covenant of good faith and fair dealing, breach of the covenant of quiet enjoyment, constructive eviction, nuisance, and declaratory relief.  Neither 350 nor Blackburn tendered their claim for defense to Century at any time during the course of the trial.  Instead, 350 and Blackburn retained the law firm of Duckor Spradling Metzger and Wynne to defend them in the *Helleis* action.

The *Helleis* bench trial concluded on June 27, 2005 with the court stating its decision from the bench.  The trial court dismissed plaintiff's causes of action for nuisance and declaratory relief and found in favor of Blackburn on all claims, but Helleis was successful in the remaining causes of action against 350.  The trial court awarded Helleis damages in the amount of $504,826.44,[4] and attorneys' fees of $295,902.  On July 8, 2005, twelve days after the

---

against 350 W.A. in the *Helleis* action, and to pay attorneys' fees awarded against 350 W.A. in the Helleis action."  (Complaint at 9, ¶ 20)

[3]     Helleis' lease was originally entered between Helleis and Hokojitsugyo Co., Ltd., the corporation that previously owned the building.  The lease agreement was assigned to 350 when 350 acquired the building.

[4]     The California Court of Appeals noted that the trial court "made an arithmetic error in calculating the judgment; the correct damage total is $504,826.44."  (Plaintiff's Exh. A at 3).

1   trial court made its decision, 350 tendered a claim for defense and indemnity to Century.

2   (Complaint at 8)

3          Four days after the tender of the claim, the state court entered judgment against 350.  On

4   July 27, 2005, Century sent 350 notice it would defend the company in post-judgment and

5   appellate proceedings under a reservation of rights.  (Complaint at 8)  Century then filed the

6   above-captioned case on August 3, 2005, to obtain a declaratory judgment and reimbursement of

7   attorney's fees and costs.[5]  Plaintiff seeks a declaration of its rights and duties under the policy it

8   issued to 350 contending it had no obligation to defend or indemnify 350 or Blackburn.

9   (Complaint at 8)  350 filed an answer on October 3, 2005.  (Answer [doc. #8])  350 and

10  Blackburn filed a counterclaim[6] for declaratory relief, breach of written contract, and breach of

11  the implied covenant of good faith and fair dealing on October 3, 2005.  (Counterclaim [doc.

12  #9])

13         350 timely filed an appeal in the underlying state court action.[7]  In an effort to obtain an

14  appeal bond to protect 350's assets from immediate and allegedly aggressive execution by the

15  judgment creditor (Helleis), Century, Blackburn and 350 entered into an "Agreement to Procure

16  Appeal Bond" ("Bond Agreement") whereby Century would provide, for a six-month period

17  only, collateral as security for the appeal bond and after that time period expired, 350 and

18

19

20

---

21         [5]      The Court recently granted plaintiff leave to file an amended complaint that asserts

22  a claim for rescission.  (Order filed September 5, 2007 [doc. #65]).

23         [6]      Plaintiff refers to 350 and Blackburn's counterclaim as a crossclaim.  A
    counterclaim is a claim for affirmative relief asserted by a party, generally a defendant, against

24  an opposing party, generally a plaintiff.  An initial claim against a co-party, *e.g.*, a co-defendant,
    is brought by way of a cross-claim rather than a counterclaim.  *See* FED. R. CIV. P. 13. Here, 350

25  and Blackburn are asserting claims against Century; therefore, those causes of action are
    counterclaims.

26         [7]      In the state court appeal, 350 claimed the trial court erred in both its interpretation
    and application of the lease provisions, and its finding that 350 breached the lease.  350 also

27  contended the damage award was improperly calculated and was not based on substantial
    evidence.  Because Blackburn was found not liable on all of the claims brought against him in

28  the *Helleis* action, he did not appeal the decision.

3                                          05cv1548

Blackburn would substitute their collateral as security for the appeal bond.[8]  (Exh. 1, Defendant's Lodgments in Opposition)  Under the parties' Bond Agreement, in the event Blackburn and 350 did not substitute their collateral within the six-month period, a Stipulated Judgment would be entered in Century's favor against Blackburn, 350  and other entities[9] associated with Blackburn (the "Blackburn entities").  *Id.* at 4, ¶ 7.

After the six-month period expired, along with several extensions of time, Blackburn failed to substitute their own collateral for the appeal bond.  Plaintiff eventually advised Blackburn's counsel that it would be filing an application for entry of judgment – the Stipulated Judgment – in accordance with the parties' Bond Agreement.  Plaintiff alleges that once notified of its intent, Blackburn attempted to hide his assets by transferring multiple parcels of real property from his individual or community property ownership to his personal trust.  Plaintiff asserts the transferred assets had an assessed value in excess of three million dollars.

The California Court of Appeal affirmed the *Helleis* trial court in its entirety on July 11, 2007.  This Court recently granted plaintiff's motion seeking a prejudgment writ of attachment against Blackburn and the Blackburn entities (*see* Order filed September 7, 2007 [doc. #66]) to secure the Stipulated Judgment to which plaintiff argues it is entitled and that is under consideration in this Order.

## MOTION FOR SUMMARY JUDGMENT

### a.    Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[8]      As part of the Bond Agreement, there were also Guaranty and Indemnity Agreements executed by Blackburn and Blackburn entities, including 350.

[9]      The Blackburn entities are 350 W.A. LLC; B&H Property Systems, Inc.; 350 West Ash Urban Homes, Inc.; and the David A. Blackburn Family Trust.

of law." FED. R. CIV. P. 56(c). A fact is material when, under the substantive governing law, it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the burden of proof at trial, it may carry its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). When the moving party bears the burden of proof on an issue — whether on a claim for relief or an affirmative defense — the party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in its favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *see S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party fails to discharge its initial burden of production, summary judgment must be denied and the court need not consider the nonmoving party's evidence, even if the nonmoving party bears the burden of persuasion at trial. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970); *Nissan Fire*, 210 F.3d at 1102-03. When the moving party carries its initial burden of production, the nonmoving party cannot "rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256. Rather, the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *Anderson*, 477 U.S. at 256; *Nissan Fire*, 210 F.3d at 1103.

A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When ruling on a summary judgment motion, the court cannot engage in credibility determinations or weighing of

the evidence; these are functions for the jury.  *Anderson*, 477 U.S. at 255; *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002).  The court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the non-movant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003).  The court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

    **b.**    **Discussion**

        **1.**    **Policy Language**

    The Century policy issued to 350 provides:

> 1.  Insuring Agreement
> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Exh. C, Century Surety Company Commercial Lines Policy, Common Policy Declarations at §1, Coverage A, ¶ 1) It is undisputed that Flagship did not seek damages for property damage or bodily injury.

    The Century policy also provided for personal and advertising injury liability:

> 1.  Insuring Agreement
> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defendant the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.
> . . .
> 2.  Exclusions
>    This insurance does not apply to:
> . . .
> f.  Breach of Contract

05cv1548

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

(*Id.*, Section 1, Coverage B, ¶¶ 1, 2).

Further, the Century policy provides:

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
. . .

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that *a person* occupies, committed by or on behalf of its owner, landlord or lessor;

(*Id.*, Century Policy Declarations at Special Exclusions and Limitations Endorsement, ¶ C, 4 (emphasis added)).

### 2.    Coverage under the Policy

#### a.    Natural person or business entity

Century contends that under the commercial general liability policy ("insurance policy" or "policy") it issued to 350, there is no coverage for an eviction of a business entity but rather coverage is available only for an eviction of a natural person.  Plaintiff asserts because Flagship is a business entity, its eviction from the 350 building is not covered under the Century policy. 350 and Blackburn argue, however, that Flagship is a natural person because it is a sole proprietorship, *i.e.,* Helleis is a natural person doing business as Flagship and therefore, coverage is available under the policy for her wrongful eviction.

Plaintiff relies on  *Mirpad v. Cal. Ins. Guarantee Ass'n.*, 132 Cal. App. 4th 1058 (2005), to support its argument that Flagship, as a business entity or organization, is not covered under the Century policy.  The *Mirpad* court held that the term  "person" meant "natural person" and "organization" meant a legal entity other than a  "natural person" as used in the policy.  *Id.* at 1070.   Blackburn and 350 acknowledge *Mirpad* to the extent that the court held that an insurer has no duty to defend the insured under a commercial general liability policy that provided coverage only for a claim for wrongful eviction of a natural person.  The policy language here is virtually identical to the language in the *Mirpad* case, which provides no coverage for eviction of a business entity.  But Blackburn and 350 note that the outcome in *Mirpad* was based on the

interpretation of the word "person" and in this case, the lessee, Helleis, was a natural person rather than a business entity.

The *Mirpad* court concluded that when an insurance policy consistently distinguishes between persons and organizations, the distinct meanings have to be applied by the courts. *Id.* Based on the language of the policy, the *Mirpad* court held that the wrongful eviction offense was directed specifically at victims who were natural persons, not organizations:

> An examination of how the isolated word "person" is used throughout the policy (including even in another provision of the personal injury clause) demonstrates that it is *consistently* used to refer *only* to natural persons. . . . Other types of legal entities (*i.e.,* corporations, partnerships or joint ventures) on the other hand, are clearly characterized as "organizations.

*Id.* at 1070 (emphasis in original).

Although 350 and Blackburn must concede that Helleis rented commercial space to conduct Flagship's business in the 350 commercial-use building rather than residing in it, they argue that because Helleis is a natural person who signed the lease and who functions as a sole proprietor, coverage exists for any liability arising from her wrongful eviction under the Century policy.   In other words, Blackburn and 350 are attempting to take the Helleis business entity, Flagship, out of the "organization" category and place it within the "natural persons" category because Flagship is a sole proprietorship.

As in *Mirpad*, the language of the Century policy provides for coverage for "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of *private occupancy* of a *room, dwelling or premises* that *a person occupies*, committed by or on behalf of its owner, landlord or lessor."  (Exh. 1, Century Policy Declarations at Special Exclusions and Limitations Endorsement, ¶ C, 4 (emphasis added)).  The *Mirpad* noted that this language in the context of "wrongful eviction" refers only to a natural person because

> the places from which the eviction must take place are places where people live. The relationship between eviction and the intent that it be from a place where *people live* is consistent with the places listed in the definition of "personal injury": "wrongful eviction from . . . a room, . . . a dwelling; or . . . a premises."

*Mirpad*, 132 Cal. App. 4th at 1072 (emphasis in original).

05cv1548

1    Based upon *Mirpad*, plaintiff's argument the term "person" requires that an eviction must

2    be from a place where a natural person lives and not from a commercial premise is correct.  The

3    evidence is undisputed that at no time did Helleis reside at or occupy the space at 350 as her

4    dwelling.  Further, 350 and Blackburn's attempt to carve out a niche for a sole proprietorship to

5    be deemed a "natural person" because a sole proprietorship is not an incorporated entity – even

6    though it engages in clearly and exclusively commercial activity – is unsupported and without

7    merit.

8    Accordingly, the Court must conclude that, as a matter of law, because Flagship was an

9    operating business entity at the time of the wrongful eviction, Helleis, doing business as

10   Flagship, was a business entity or organization and not a natural person.  Thus, there is no

11   coverage for Flagship's wrongful eviction under the Century policy for 350 and/or Blackburn

12                   **b.    Tort or Contract Claim**

13   As set forth above, the Century policy provided for personal and advertising injury

14   liability with an exclusion for breach of contract.

15           2.  Exclusions
             This insurance does not apply to:
16           . . .
             f.  Breach of Contract
17               "Personal and advertising injury" arising out of a breach of contract, except an
                 implied contract to use another's advertising idea in your "advertisement."
18

19   (Exh. 1, Section 1, Coverage B, ¶ 2(f))

20   In opposing plaintiff's motion for summary judgment and recognizing there is no

21   coverage for claims sounding in contract, 350 and Blackburn argue that because the claim for

22   wrongful eviction from the 350 building in the underlying action is a tort claim, they are entitled

23   to a defense under the policy notwithstanding there also were claims sounding in contract.[10]  350

24   and Blackburn state that "[b]ecause the Helleis action included claims arising out of both tort

25   and contract, and because the judgment in Helleis is based upon both tort and contract claims,

26   _____

27       [10]     Although 350 and Blackburn correctly put forth that the *Helleis* action included
         claims arising out of tort, the only tort they discuss is for wrongful eviction.  (*See* Opp. at 14-15).
28   They state that "[t]he Helleis court specifically noted the alleged tortuous conduct as a basis for
         the constructive eviction judgment."  *Id.* at 15.

                                        9                                    05cv1548

1   Century has an immediate and ongoing duty to defend 350 in the Helleis Action, and, if/when

2   the judgment becomes final, will owe 350 indemnity against that judgment as well."  (Opp. at

3   15).  The Court notes that once Blackburn and 350 tendered their claim for defense, Century

4   accepted the tender of defense under a full reservation of rights.  The Court also takes judicial

5   notice that the judgment of the trial court in the underlying action was affirmed on appeal.

6   Further, as discussed above, whether the claims are characterized as tort or contract or some

7   combination of the two, there is no coverage under the Century policy for 350's wrongful

8   eviction of Flagship, a business entity/organization.

9       Based on the foregoing, Century had no duty to defend or indemnify Blackburn and/or

10  350 and plaintiff is entitled to summary judgment on this basis as well.

11              **3.      Substantially Prejudiced**

12      Finally, plaintiff seeks summary judgment on the ground that it was substantially

13  prejudiced by 350 and Blackburn's late tender of defense.  As noted above, 350 and Blackburn

14  did not tender a claim for defense and indemnity to Century until July 8, 2005, twelve days *after*

15  the trial court made its decision finding in favor of Helleis and against 350.

16      The Century policy specifically provides that in the event of an occurrence, offense, claim

17  or suit, the insured must ensure that the insurer is notified "as soon as practicable."   (Exh. C,

18  Century Policy, Common Policy Declarations at Section IV, Section 2(a) through (c)).  The

19  policy language also provides"

20              b.      If a claim is made or "suit" is brought against any insured, you must:
            (2)     Notify us as soon as practicable
21              You must see to it that we receive written notice of the claim or "suit" as
            soon as practicable.

22
            c.      You and any other involved insured must:
23          (1)     Immediately send us copies of any demands, notices, summonses or legal
            papers received in connection with the claim or "suit" . . .
24          . . .
            (3)     Cooperate with us in the investigation or settlement of the claim or defense
25              against the "suit"

26  *Id.*

27      Century argues that it was substantially prejudiced because it was prevented from

28  contemporaneously conducting its own investigation; examining the building prior to the

                                    10                              05cv1548

completion of renovations; defending 350 and Blackburn at trial; obtaining its own experts; and attempting to reach a settlement prior to trial.   Century relies on *Colonial Gas Energy System v. Unigard Mut. Ins. Co.*, 441 F. Supp. 765 (N.D. Cal. 1977) for the proposition that "substantially prejudiced" can be found as a matter of law.

350 and Blackburn contend, however, that Century was not precluded from investigating any aspect of its policy defenses or the facts underlying the *Helleis* judgment, and Century has not proven what it would have done differently or what it might have done that would have resulted in a better or outcome and therefore, Century has not shown "actual prejudice".

Because the Court has found, as a matter of law, that Century was under no duty to defend or indemnify 350 and/or Blackburn, any finding of substantial prejudice is moot and unnecessary to the outcome of this action.

### 4.    Blackburn's Standing

Having determined that Century had no obligation to defend or indemnify 350 and/or Blackburn, the Court makes no finding concerning whether Blackburn has standing to litigate his counterclaim.   Nevertheless, by granting plaintiff's motion for summary judgment, Blackburn's counterclaims are denied.

### 5.    Reimbursement of Fees and Costs

When an insurer provides an insured a defense under a reservation of rights, and it is later determined that the claims were not covered and the duty to defend never arose, the insurer is entitled to reimbursement for costs advanced.  *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643 (2005).   350 and Blackburn do not dispute the principle that reimbursement is available when the duty to defend does not arise, but rather argue that the *Helleis* claims are covered under the policy.   Here, Century properly reserved its rights at the time of the tender of claim for defense.  The Court has also found that the claims were not covered under the policy and Century was not required to provide a defense or to indemnify 350 or Blackburn.   Accordingly, Century is entitled to recoup its fees and expenses incurred, subject to proof, from the time of 350 and Blackburn's tender until the present.

### C.    Conclusion

1    Plaintiff is entitled to summary judgment in the form of declaratory relief.  The Century

2    insurance policy does not provide coverage for breaches of contract or for constructive eviction

3    of a business entity from a commercial building.  The Court makes no finding as to whether

4    Century was substantially prejudiced as a matter of law by 350 and Blackburn's late tender of

5    claim for defense.  Further, the Court makes no finding concerning Blackburn's standing to

6    bring counterclaims in this action.  All claims brought by Blackburn and 350 in their

7    counterclaim are denied based on the finding that plaintiff is entitled to summary judgment.

8    Finally, because Century provided a defense when coverage was not owed, Century is entitled to

9    be reimbursed its fees and costs incurred subject to proof.[11]

10    **MOTION FOR ENTRY OF JUDGMENT**

11    As noted above, when 350 filed its appeal in the underlying action, it needed to obtain an

12    appeal bond to protect its assets from execution by the judgment creditor Helleis.  Blackburn and

13    350 contend that they had no obligation to post an appellate bond but rather, Century had the

14    obligation under the insurance policy to post a bond, including both paying the bond premiums

15    and providing the bond collateral.  Because Century vigorously disputed its obligation under the

16    policy to provide the collateral for the appellate bond, Century, 350 and Blackburn[12] entered into

17    their Bond Agreement whereby Century would provide, for a six-month period, collateral as

18    security for the appeal bond and after that time period expired, Blackburn and 350 would

19    substitute their collateral as security for the appeal bond.  Under the parties' Bond Agreement, in

20    the event Blackburn and 350 did not substitute their own collateral within the six-month period,

21    a Stipulated Judgment would be entered in Century's favor against Blackburn and the Blackburn

22    entities. (Bond Agreement at ¶¶ 4, 7)  It is not disputed that Blackburn failed to post collateral

23    after the six-month period expired.  Accordingly, plaintiff seeks to have the Court enter the

24    Stipulated Judgment.  Blackburn and 350 argue that notwithstanding their technical failure to

25

26    [11]    The Court has determined that plaintiff is entitled to summary judgment on all its
claims except for the newly added claim for rescission.  Thus, the Court cannot enter judgment
27    in plaintiff's favor and thereby terminate the case.

28    [12]    The Bond Agreement notes that Blackburn and 350 are designated as the
"Insureds".  (*See* Defendant/Counterclaimant's Notice of Lodgment, Exh. 1 at 1)

05cv1548

provide collateral as required under the Bond Agreement, their non-performance should be excused for reasons that are discussed below.

Plaintiff initially brought its request in the form of an *ex parte* application for an order that judgment be entered. [doc. #23].  In response, 350 and Blackburn filed an *ex parte* application for an order that Century's *ex parte* application be heard as a noticed motion which would allow for full briefing. [doc. #24].  The parties then filed a joint motion regarding hearing dates that included a hearing date and briefing schedule for plaintiff's *ex parte* application. [doc. #25] Consequently, 350 and Blackburn's *ex parte* application was rendered moot and the Court will construe plaintiff's *ex parte* application as a motion for an order that the stipulated judgment be entered.

The Court notes that some of the arguments brought in opposition to the present motion were raised by 350 and Blackburn in opposition [doc. #62] to plaintiff's motion for a writ of attachment [doc. #60] that the Court granted on September 7, 2007 [doc. #66].

**A.     The Bond Agreement Language**

The Bond Agreement between Century, 350 and Blackburn provides in relevant part:

> 4.  <u>Substitution of Collateral</u>.  On a date no later than six months from the effective date of the bond, the Insureds will substitute collateral acceptable to the bonding company in an amount equal to or greater than the collateral Century Surety is required to provide in order to procure the bond and will cause the collateral posted by Century Surety to be released to Century Surety.
>
> . . .
>
> 7.  <u>Stipulated Judgment and Covenant Not to Execute</u>: David Blackburn, and each of the entities in which he (or any trust in which he has a beneficial interest) has a financial interest, including but not limited to any personal or real properties, will agree to the entry of judgment in favor or Century Surety in the Federal Court action in the event of a default on the agreements made in Paragraphs 4, 5, or 6 of this Agreement. . . .  In the event that the Insured parties or their affiliated entities default on the agreements made in Paragraphs 4, 5, or 6 of this Agreement, Century Surety is entitled to file the Stipulated Judgment with the clerk of the court forthwith and have it presented to the United States District Court for signature by a judge, Century Surety shall then be entitled to commence collection efforts.  In the event there is no default, and upon the substitution of collateral called for in Paragraph 4 herein, Century Surety shall destroy the Stipulated Judgment and Covenant Not to Execute.

(Bond Agreement, Exh. 1 at ¶¶ 4, 7, Defendant and Counterclaimants' Lodgment)

**B.     Whether Default is Excused**

As noted, plaintiff contends that the Stipulated Judgment, the Bond Agreement, the

13

1   Guaranty Agreements, and the Indemnity Agreements are valid and enforceable against

2   Blackburn, and the Blackburn entities including 350.  The Bond Agreement required 350 and

3   Blackburn to provide collateral within six months of the issuance of the appeal bond in place of

4   the collateral Century had posted to secure the appeal bond.   Further, the Indemnity and

5   Guaranty Agreements required Blackburn and the Blackburn entities to guarantee the obligations

6   found in the Bond Agreement if there was a default.  Finally, plaintiff contends that Blackburn

7   and the Blackburn entities agreed to submit to a Stipulated Judgment in the event defendants did

8   not timely substitute their own collateral for the appeal bond.  Blackburn and the Blackburn

9   entities do not contend that their duly appointed representative signed the relevant contractual

10  agreements and that each of the entities failed to perform under the agreements by substituting

11  collateral after the expiration of the six-month period agreed to but rather argue that their default

12  was not voluntary.  Based on plaintiff's evidence and Blackburn and 350's acknowledgment that

13  they did not substitute their collateral for Century's as required, Blackburn and the Blackburn

14  entities have defaulted on the Bond Agreement unless there is some basis for finding the default

15  excused.  Blackburn and 350 argue that performance of the Bond Agreement was impossible and

16  they submitted to onerous and unconscionable terms in the Bond Agreement because "they had

17  no other choice."  (Opp. at 3)

18           **1.     Impossibility or Frustration of Purpose as Excusing Performance**

19           Blackburn and 350 first contend that any default on their part should be excused because

20  of the doctrines of impossibility and/or frustration of purpose with respect to the Bond

21  Agreement.  Specifically, they contend that because the surety plaintiff selected would not

22  accept real property as collateral for the appeal bond, they could not comply with the terms of

23  the Bond Agreement.  Blackburn and 350 further contend plaintiff knew, prior to obtaining the

24  appeal bond, that Blackburn and 350 planned to post real property as collateral for the appeal

25  bond, and that Blackburn always lacked sufficient assets, other than real property, with which to

26  collateralize the $1.2 million appeal bond.  According to Blackburn, the parties "always

27  contemplated that the substituted collateral would be real property" *Id.* at 7.  Because the surety

28  plaintiff selected would not accept real property as collateral, Blackburn and 350 assert that

1    performance of the Bond Agreement was impossible.

2         The doctrine of impossibility concerns situations in which performance is or becomes

3    either illegal, physically impossible or extremely impracticable.  *See Mitchell v. Ceazan Tires,*

4    25 Cal.2d 45, 48 (1944).   Further, California Civil Code § 1511 sets forth causes excusing

5    performance:

6              The want of performance of an obligation, or of an offer of performance, in whole
               or in part, or any delay therein, is excused by the following causes, to the extent to
7              which they operate:
               . . .
8              2. When it is prevented or delayed by an irresistible, superhuman cause, or by the
               act of public enemies of this state or of the United States, unless the parties have
9              expressly agreed to the contrary; . . .

10   CIV. CODE § 1511.

11        Defendants argue that the surety, selected by plaintiff, would not allow real property

12   collateral to be used to secure the appeal bond and this is what caused defendants' default and

13   excuses that default.  Although the surety allegedly required defendants to provide non-real

14   property as collateral, defendants cannot demonstrate that the type of collateral required for the

15   appeal bond was a basic term or condition of the contract, or that it caused the performance of

16   their contractual obligations to be impossible.  Facts that  may make performance more difficult

17   or costly than contemplated when the agreement was executed do not constitute impossibility.

18   *Butler v. Nepple*, 54 Cal.2d 589, 599 (1960).

19        Blackburn and 350 also argue that Century's action in selecting a surety that would not

20   accept real property as collateral frustrated their performance of the Bond Agreement.  The

21   frustration of purpose doctrine applies when performance is possible but a supervening,

22   fortuitous event has virtually destroyed the value of the consideration to be provided.  *Lloyd v.*

23   *Murphy*, 25 Cal.2d 48, 53 (1944).  The Restatement section on frustration of purpose provides:

24             Where, after a contract is made, a party's principal purpose is substantially
               frustrated without his fault by the occurrence of an event the non-occurrence of
25             which was a basic assumption on which the contract was made, his remaining
               duties to render performance are discharged, unless the language or circumstances
26             indicate the contrary.

27   RESTATEMENT (SECOND) OF CONTRACTS § 265; *see also Federal Leasing Consultants v.*

28   *Mitchell Lipsett Co.*, 150 Cal. Rptr. 82, 84 (Cal. Ct. App. 1978) (lessor of burglar alarm system

1  could rely on defense of frustration of purpose when, subsequent to installation of the system,
2  the government prohibited use of that kind of system).

3       Plaintiff argues that Blackburn and 350 were not precluded from performing under the
4  Bond Agreement because the surety would not accept real estate as collateral.  Century first
5  notes that Blackburn and 350 have failed to offer admissible evidence that they were capable of
6  performing under the Bond Agreement even if the surety had agreed to accept real property as an
7  acceptable form of collateral.  Further, even if Blackburn and 350 were capable of providing
8  sufficient equity in real estate to support the $1.2 million bond, they fail to offer admissible
9  evidence that would explain why their assets could not be converted to a form of collateral
10 acceptable to the surety.  Finally, there is nothing in the fully integrated contract to support
11 Blackburn and 350's contention that the Bond Agreement was conditioned on the surety's
12 acceptance of real property as collateral.

13      Here, performance of the Bond Agreement was not rendered impossible by plaintiff's
14 selection of the surety or the surety's insistence that the collateral be non-real property.
15 Additionally, there was no frustration in making the contract even assuming defendants'
16 assertions are true.  The Bond Agreement does not provide that the surety must accept real
17 property as collateral.  Thus, Blackburn and 350 have not demonstrated an excuse of
18 performance under the Bond Agreement based on impossibility or frustration of purpose.

19                    **2.    Unconscionability**

20      Blackburn and 350 also argue that the Bond Agreement entitling Century to have
21 judgment entered against Blackburn and 350 based on their inability to substitute collateral is
22 unenforceable because it was unconscionable.

23      Civil Code section 1670.5, subdivision (a) provides:

24       If the court as a matter of law finds the contract or any clause of the contract to
         have been unconscionable at the time it was made the court may refuse to enforce
25       the contract, or it may enforce the remainder of the contract without the
         unconscionable clause, or it may so limit the application of any unconscionable
26       clause as to avoid any unconscionable result.

27 CIV. CODE §1670.5(a).

28      A court may refuse to enforce an unconscionable contract, but both procedural and

substantive unconscionability must be present.  *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000).  Procedural unconscionability derives from "inequality of bargaining power"; "the absence of real negotiation or a meaningful choice"; and "surprise" resulting from hidden term in a lengthy contract or some other term or condition that is not obvious.  *American Software, Inc. v. Ali*, 46 Cal. App.4th 1386, 1391 (1996).  Substantive unconscionability exists where the resulting agreement is overly harsh or so one-sided as to shock the conscience.  *Armendariz*, 24 Cal. 4th at 114.

### a.       Procedural Unconscionability

Blackburn and 350 contend that there was inequality of bargaining power arguing that notwithstanding that both sides were represented by counsel, "Century was in a position to insist on whatever terms it wished" because Century was unwilling to provide the collateral for the appellate bond[13] and 350 was facing "'financial ruin' at the hands of its creditor, Helleis," if an appeal bond was not in place.  Blackburn states that because he was unable to place a bond himself immediately or shortly after the judgment was entered in Helleis' favor in the underlying action, Century was able to insist on the "most onerous terms imaginable" and Blackburn was faced with no other options than to accept those terms. (Opp. at 14).

But Blackburn fails to show that he had no meaningful choice.  Although Blackburn states he was unable to secure a bond at the time of the *Helleis* judgment or shortly thereafter, he entered into the Bond Agreement apparently with the intent and ability to meet his obligations under the Bond Agreement and confident that he would be able to substitute his own collateral within six months of the agreement with Century.  In other words, given some "breathing room," Blackburn would have been able to provide collateral for an appeal bond.  The Bond Agreement

---

[13]       The Bond Agreement, which plaintiff asserts was negotiated at arms-length, sets forth that there was a disagreement between the parties concerning whether or not Century was required under the policy to provide the collateral for an appeal bond. (Bond Agreement at ¶ H). It is not disputed, however, that the policy language provides in relevant part:
SUPPLEMENTARY PAYMENTS – COVERAGES A AND B
1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
      c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.
(Plaintiff's Exh. C to Motion for Summary Judgment, Policy at 10, ¶ 1(c))

1  allowed Blackburn a six-month time period to accomplish what he was unable to do immediately

2  – obtain an appellate bond to avoid execution on the judgment by the judgment creditor.  Unless

3  Blackburn entered into the Bond Agreement knowing that he did not have the ability to secure

4  the appeal bond with his collateral and intending to default on the agreement, there was no

5  inequality of bargaining power.  Although Blackburn argues to the contrary, Century was under

6  no obligation to provide the collateral for an appeal bond under the policy.  By providing

7  Blackburn and 350 with collateral for a six-month period in order to have an appeal bond in

8  place, Blackburn and 350 obtained significant benefit including time to obtain suitable substitute

9  collateral to maintain the bond and to prevent execution on the *Helleis* judgment.

10      Blackburn and 350 have failed to demonstrate procedural unconscionability.  As noted

11  above, "'[t]he prevailing view is that [procedural and substantive unconscionability] must both

12  be present in order for a court to exercise its discretion to refuse to enforce a contract or clause

13  under the doctrine of unconscionability.'" *Armendariz*, 24 Cal. 4th at 114 (citations omitted).

14  The California Supreme Court recently noted: "a conclusion that a contract contains no element

15  of procedural unconscionability is tantamount to saying that, no matter how one-sided the

16  contract terms, a court will not disturb the contract because of its confidence that the contract

17  was negotiated or chosen freely, that the party subject to a seemingly one-sided term is presumed

18  to have obtained some advantage from conceding the term or that, if one party negotiated poorly,

19  it is not the court's place to rectify these kinds of errors or asymmetries." *Gentry v. Superior*

20  *Court*, 64 Cal. Rptr. 3d 773 (2007).  Although the Court finds no procedural unconscionability,

21  the Court will also examine whether the Bond Agreement should not be enforced because of

22  substantive unconscionability.

23                                  **b.      Substantive Unconscionability**

24      The substantive prong of unconscionability encompasses overly harsh or one-sided

25  results.  *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App.4th 708, 722-723 (2003) . "Courts

26  have identified a number of factors that may result in substantive unconscionability." *3*

27  *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 656  (2004).  "But the paramount

28  consideration in assessing conscionability is mutuality."  *Id.* at 657.  California courts require a

1  "modicum of bilaterality" in an arbitration agreement.  *Armendariz*, 24 Cal. 4th at 117.  Some

2  degree of non-mutuality is acceptable so long as the non-mutuality is justified by "business

3  realities." *Id.*

4         Once judgment was entered in the *Helleis* action, 350 became liable for the judgment. In

5  order to stop the judgment creditor from executing on the judgment, 350 was required to obtain

6  an appeal bond.  Even though under the insurance policy, Century was not required to provide

7  collateral for an appeal bond, it entered into the Bond Agreement by providing collateral for a

8  limited time to prevent execution of the *Helleis* judgment.  The Bond Agreement allowed

9  Blackburn and the Blackburn entities to substitute their collateral at the expiration of the six

10 months which is a significant benefit given Blackburn's statement that he was unable to place a

11 bond when the judgment creditor was commencing execution on the judgment.  As a term of the

12 Bond Agreement, Blackburn's failure to substitute its own collateral would be a default that

13 would permit Century to request a judgment.  Plaintiff contends that the stipulated judgment

14 would do nothing more than permit Century to remove its collateral underlying the appeal bond

15 and the judgment creditor would be able to execute on the judgment debtor, 350's assets.  Thus,

16 there is nothing about the Bond Agreement that is one-sided.

17        Blackburn and 350 argue, however, that Century had a duty under the policy to pay for

18 and collateralize the bond.  But the policy requires Century to pay for the bond only and does not

19 require Century to provide the collateral for the appeal bond.  Further, Blackburn and 350

20 contend that it was Century's action in selecting a surety that does not accept real property as

21 collateral for an appellate bond that cause Blackburn and 350 to be unable to perform under the

22 Bond Agreement.  As noted above, the Bond Agreement does not contain a provision or term

23 making the type of collateral used to secure the bond a condition of the agreement.   Finally,

24 Blackburn and 350 argue that the time frame, six months, for substituting their collateral under

25 the Bond Agreement was "clearly unconscionable." (Opp. at 15).   Blackburn and 350 offers no

26 support for this proposition.

27        Having considered the arguments of the parties, the Court finds that even if some degree

28 of non-mutuality is present, which it does not, the non-mutuality is justified by the realities of

1    the situation.  Accordingly, the Court concludes there has been no showing of either procedural

2    or substantive unconscionability.

3                       **3.      Procedurally Improper Application**

4            As discussed above, as part of the Bond Agreement, Blackburn and each of the entities in

5    which he has a beneficial or financial interest agreed to entry of judgment in favor of Century in

6    this action should there be a default of Blackburn and 350's promise to substitute their collateral

7    under the terms of the Bond Agreement.  Blackburn and 350 contends that the judgment sought

8    is procedurally improper and exceeds the Court's jurisdiction because the right to entry of the

9    stipulated judgment involves three non-parties to this action, *viz.*, B&H Property Systems, Inc.;

10   350 West Ash Urban Homes, Inc.; and the David A. Blackburn Family Trust.

11           The Bond Agreement specifically provides for this Court's jurisdiction over Blackburn

12   and each of his entities:

13               David Blackburn, and each of the entities in which he (or any trust in which he has
                 a beneficial interest) has a financial interest . . . will agree to the entry of judgment
14               in favor of Century Surety in the **Federal Court Action** in the event of a default
                 on the agreements made in Paragraph 4, 5 or 6 of this Agreement.
15

16   (Exh. B (emphasis added) to Cousineau's Declar.)   Paragraph F of the Bond Agreement Recitals

17   states the "Federal Court Action" is "Case No. 05CV1548-L(WMc)" *Id.*

18           As plaintiff correctly states, by choosing this forum in their Bond Agreement in which to

19   have the judgment entered against them, Blackburn and 350 have no valid claim that this Court

20   is without jurisdiction over the non-parties.

21           **C.      Conclusion**

22           There is no legal or factual basis for finding that Blackburn and 350's default under the

23   Bond Agreement and associated agreements has been excused.  The agreements are enforceable

24   and were neither impossible to perform nor unconscionable.  The Court has jurisdiction to

25   entered the stipulated judgment with respect to the Blackburn entities who are not parties to this

26   action.  Accordingly, the Court will grant plaintiff's motion for entry of the stipulated judgment

27   which will allow Century to replace its own collateral with the amount of the stipulated

28   judgment it will receive from 350.  The Stipulated Judgment does not, however, reach the merits

of any of the claims or counterclaims found in the Complaint or Counterclaim.  A determination of certain claims and counterclaims has been reached in plaintiff's motion for summary adjudication contained within this Order.  Plaintiff's remaining claim for rescission has not been determined.

### CONCLUSION

Based on the record presented and for the reasons set forth above:

1.  Plaintiff's motion for summary adjudication is **GRANTED** [doc. #33];

2.  Plaintiff's motion for entry of the stipulated judgment is **GRANTED** [doc. #23];

3.  The Clerk of the Court shall enter the stipulated judgment in favor of Century Surety Company and against 350 W.A., LLC; David Blackburn; B&H Property Systems, Inc.; 350 West Ash Urban Homes, Inc.; and the David A. Blackburn Family Trust in the amount of $1,201,088.16.  Century may execute upon this judgment as provided under the law.

4.  The parties shall jointly and within five days of the filing of this Order, contact the assigned magistrate judge to set a status and/or scheduling conference concerning plaintiff's rescission claim and possible settlement of any and all remaining claims.

**IT IS SO ORDERED.**

DATED: September 25, 2007

M. James Lorenz
United States District Court Judge

COPY TO:

HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

21                                                                                                05cv1548