UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTURY SURETY COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>350 W.A., LLC, *et al.*,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Civil No. 05-CV-1548-L(BGS)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [doc. #254]** |

Plaintiff/counterdefendant Century Surety Company moves for summary judgment or in the alternative for summary adjudication. [doc. #254] In its motion, plaintiff seeks a declaration that it is entitled to rescind the insurance policy and is not liable under an insurance policy it issued because of 350's late tender. Century also seeks summary judgment on counterclaimants' breach of contract and bad faith claims. The motion has been fully briefed and is considered without oral argument.

**I. Background**

David A. Blackburn purchased a commercial office building at 350 West Ash Street in San Diego from Hokojitsugyo Co., LTD. During escrow, the building sustained significant damage due to multiple flooding incidents. Nevertheless, Blackburn completed the purchase

with the Grant Deed recorded on May 15, 2003. Immediately thereafter Blackburn transferred the property to 350 W.A. LLC, which was formed for the property ownership, with the Grant Deed also recorded on May 15, 2003. Century issued a commercial general liability policy, CCP267153 to 350, for the 350 West Ash commercial office building with an effective date of May 15, 2003.

At the time of the transfer of ownership, Jacqueline Helleis ("Helleis") was and had been leasing space in the building for her business, Flagship Research ("Flagship").[1]

On May 15, 2003, 350, by letter signed by Blackburn, advised the building tenants that their leases – including Flagship's lease – were being terminated due to environmental and fire safety concerns. Blackburn had determined the building to be uninhabitable.

On June 12, 2003, Helleis filed a Complaint against 350 and Blackburn in the Superior Court for the County of San Diego ("underlying action" or "*Helleis*"). The *Helleis* action included causes of action for breach of contract, breach of the covenant of good faith and fair dealing, breach of the covenant of quiet enjoyment, constructive eviction, nuisance, and declaratory relief. Neither 350 nor Blackburn tendered their claim for defense to Century at any time during the course of the trial. Instead, 350 and Blackburn retained the law firm of Duckor Spradling Metzger and Wynne to defend them in the *Helleis* action.

The *Helleis* bench trial concluded on June 27, 2005, with the court announcing its decision from the bench. The trial court dismissed plaintiff's causes of action for nuisance and declaratory relief and found in favor of Blackburn on all claims, but Helleis was successful in the remaining causes of action against 350. The trial court awarded Helleis damages in the amount of $504,826.44, and attorneys' fees of $295,902.00 against 350 only.

On July 8, 2005, twelve days after the trial court made its decision, 350 tendered a claim for defense and indemnity to Century. Four days after 350 tendered the claim, the state court entered judgment against 350. On July 27, 2005, Century sent 350 notice it would defend it in

---

[1] Helleis' lease was originally entered between Helleis and Hokojitsugyo Co., Ltd., the corporation that previously owned the building. The lease agreement was assigned to 350 when 350 acquired the building.

post-judgment and appellate proceedings under a reservation of rights. Century then filed the above-captioned case against 350 and Helleis on August 3, 2005, seeking a declaration of its rights and duties under the policy it issued to 350 contending it had no obligation to defend or indemnify 350. 350 filed an answer on October 3, 2005. 350 and Blackburn filed a counterclaim for declaratory relief, breach of written contract, and breach of the implied covenant of good faith and fair dealing on October 3, 2005.

350 timely filed an appeal in the underlying state court action. As previously noted, Blackburn was found not liable on all of the claims brought against him in the *Helleis* action. Neither Blackburn nor Helleis appealed the decision. In an effort to obtain an appeal bond to protect 350's assets from immediate and allegedly aggressive execution by the judgment creditor (Helleis), Century, Blackburn and 350 entered into an "Agreement to Procure Appeal Bond" ("Bond Agreement") whereby Century would provide, for a six-month period only, collateral as security for the appeal bond and after that time period expired, 350 and Blackburn would substitute their collateral as security for the appeal bond. Under the parties' Bond Agreement, in the event Blackburn and 350 did not substitute their collateral within the six-month period, a Stipulated Judgment would be entered in Century's favor against Blackburn, 350 and other entities associated with Blackburn. After the six-month period expired, along with several extensions of time, Blackburn and 350 failed to substitute their own collateral for the appeal bond. Plaintiff eventually advised Blackburn's counsel that it would be filing an application for entry of judgment – the Stipulated Judgment – in accordance with the parties' Bond Agreement.

The California Court of Appeal affirmed the *Helleis* trial court in its entirety on July 11, 2007.

After full briefing, the Court granted plaintiff's motion for entry of the stipulated judgment on September 25, 2007. In that same Order, the Court granted plaintiff's motion for summary judgment finding that the insurance policy did not provide coverage for breaches of contract or for constructive eviction of a business entity from a commercial building. Because of the grant of summary judgment in Century's favor, all claims brought by 350 and Blackburn in their counterclaim were denied with the Court making no findings as to whether Century was

substantially prejudiced as a matter of law by 350's late tender or Blackburn's standing to bring counterclaims in this action.

350 and Blackburn appealed the Court's decision to the Ninth Circuit Court of Appeals. In its decision, the Ninth Circuit affirmed the district court's entry of the stipulated judgment but reversed the summary judgment portion of the Order finding coverage under the relevant provision of the policy. *Century Sur. Co. v. Helleis*, 367 Fed. Appx. 765 (9th Cir. 2010). The Court of Appeals later clarified that its decision did not foreclose further factual development in the district court of Century's claim that a late tender caused substantial prejudice. (Doc. #233.)

Century again moves for summary judgment on its claims and on 350's and Blackburn's counterclaims.

**II.     Legal Standard**

Rule 56 of Federal Rules of Civil Procedure empowers the court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c).

The moving party's burden on summary judgment depends on whether it bears the burden of proof at trial with respect to the claim or defense at issue. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). If the moving party does not bear the burden at trial, it can meet its burden on summary judgment by pointing out the absence of evidence with respect to any one element of the claim or defense. *See Celotex*, 477 U.S. at 325.

If the movant meets its burden on summary judgment, the burden shifts to the nonmovant to show summary adjudication is not appropriate. *Celotex*, 477 U.S. at 317, 324. In this regard, the nonmovant must "go beyond the pleadings" and rely on "evidentiary materials" such as his "own affidavits, or . . . the depositions, answers to interrogatories, and admissions on file" to designate specific facts in opposition to the summary judgment motion. *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). These evidentiary materials must show that genuine factual issues remain which "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the moving party meets its burden, the party opposing summary judgment "may not rely merely on allegations or denials of its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456 (1992), but inferences must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party. *Celotex*, 477 U.S. at 322. Moreover, inferences cannot be created by pointing to "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, deference to the nonmoving party has limits: (1) a plaintiff cannot rest on allegations in his pleadings to overcome a motion for summary judgment, *Brinson*, 53 F.3d at 1049; and (2) self-serving affidavits do not establish a genuine issue of material fact if they fail to state facts based on personal knowledge or are too conclusory. *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for resolution by the court on a summary judgment motion. *Id*.

**III. Rescission**

The Court first looks to plaintiff's claim for rescission that was included in its first amended complaint filed September 14, 2007. If the policy is rescinded, the counterclaims for

breach of contract and bad faith fail as a matter of law.

Century contends that it is entitled to rescind the insurance policy based on two material, false responses Blackburn provided in the policy application.

Material misstatements or concealment of material facts in an application for insurance, even if unintentional, entitle an insurer to rescind the insurance policy. *Mitchell v. United Nat. Ins. Co.,* 127 Cal.App.4th 457, 468-469 (2005) ; INS. CODE, §§ 331, 359. The insurer must prove that the insured made a material "false representation" in the application. A representation is false "when the facts fail to correspond with its assertions or stipulations." (§ 358.) Materiality is determined under "a subjective test; the critical question is the effect the truthful answers would have had on [the insurer], not on some 'average reasonable' insurer." *Imperial Casualty & Indemnity Co. v. Sogomonian,* 198 Cal. App.3d 169, 181 (1988). "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." INS. CODE, § 334.

Insurance Code §§ 331 and 359 impose "heavy burdens of disclosure" "upon both parties to a contract of insurance, and any material misrepresentation or the failure, whether intentional or unintentional, to provide requested information permits rescission of the policy by the injured party." *Mitchell* (quoting *Imperial*, 198 Cal. App.3d at 179-80). Insurance Code § 332, provides that each party to an insurance contract disclose, "in good faith, all facts within his knowledge which are or which he believes to be material to the contract ...."

In the present case, Blackburn applied on behalf of 350 for insurance coverage. His response to two questions are at issue here:

> Any structural alterations contemplated? Blackburn checked the "NO" box.
> Any demolition exposure contemplated? Again, Blackburn checked the "NO" box.

**A.     False or Misleading Representations in the Policy Application**

Century states that the evidence establishes that Blackburn contemplated "structural alterations" and "demolition exposure" as early as October 2002, and therefore, the policy application information he provided was false, and the questions and the responses thereto were

material to the decision to issue the policy.

In support of its contention that "structural alterations" or "demolition exposure" was contemplated by Blackburn at the time of the time the insurance application was made, Century provides a letter to Blackburn dated October 18, 2002, from Gary London, President of The London Group Realty Advisors, who wrote:

> In review, it is our understanding that you are in the process of acquiring this commercial office high-rise, located in the Columbia District near Little Italy in Downtown San Diego, CA. Your intention is to convert the property to residential. I have invested time and consultation with you, identified and interviewed architects.

(Plt's Compendium of Exhibits, Vol. 4 at 229.)

While the property was in escrow between October 3, 2002 and early December 2002, Blackburn prepared a brochure that he provided to prospective lenders in which he represented that the building "offers an excellent opportunity to convert a well located high rise office building . . . into residential condominiums." (Plf's Exh. B, Blackburn Depo. at 135-138.)

As noted in the factual background, on May 15, 2003 – the date the insurance policy was effective – 350 advised the building tenants that their leases were being terminated. The letter announcing the lease terminations, signed by David A. Blackburn as a member of 350, stated that:

> [w]e have made the difficult decision that the building should undergo a complete renovation to restore integrity and safety to the building. . . . Indeed, it currently appears that the building will have to be de-constructed down to the building's core to fully address the damage to the building.

(Exh. G to doc. #21.)

Blackburn contends that the evidence shows a disputed factual issue as to falsity of the application responses. First, Blackburn states he did not conceal information or provide false information when he applied for commercial general liability insurance on behalf of 350 with Century because there had been "no firm determination of what 350 planned to do with the building." (Blackburn March 14, 2011 Decl. at ¶ 8.) This late and self-serving statement of Blackburn's intent does not create an issue of fact as to whether Blackburn was contemplating structural alterations or demolition exposure. Indeed, the issue is not whether 350/Blackburn

specifically and definitively intended to convert the commercial to residential use, but rather whether structural alterations or demolition exposure was contemplated. Whether 350/Blackburn intended to convert the property to residential use or retain its commercial use, it is undisputed that 350/Blackburn told the occupying tenants that the building would be undergoing "complete renovations" and likely would have to be "de-constructed down to the building's core" on May 15, 2003 – the date the policy was effective.

For the first time during this litigation, Blackburn contends that "Century's policy was to be a temporary policy only, and would only serve to protect 350 from claims asserted while it was operating the Building as a commercial office building. " (Blackburn Decl. at ¶ 9.) This statement does not create a triable issue of fact as to whether structural alterations or demolition exposure was contemplated at the time of the application.

In seeking to create a triable issue of fact, 350/Blackburn contend the questions asked in the application were vague and ambiguous. They rely on a health insurance case, *O'Riordan v. Federal Kemper Life Assur.*, 36 Cal.4th 281, 287-288 (2005). The California Supreme Court found that these questions vague and ambiguous: "Have you smoked cigarettes in the past 36 months?" and "Have you used tobacco in any other form in the past 36 months?" The Court concluded that the questions could be construed as meaning habitual smoking as opposed to limited usage because the policy did not ask whether the applicant had smoked *any* cigarettes during the relevant period. *Id.* Further, the *O'Riordan* court noted that the applicant did not conceal information about her smoking a small number of cigarettes because she disclosed it to an agent of the insurance company when she was applying for the insurance policy. *Id.*

Here, the policy application did not ask whether the applicant had made firm plans for structural alterations or demolitions exposure but rather whether such acts were contemplated. In ordinary and plain usage, the term "contemplated" would include the concept of "some thought was put into the concept of converting the building to condominiums, at the time of 350's application there was no firm plan to convert the building," (Opp. at 30) or "At the time I signed the Application, although I was at the time heading in the direction of a condominium conversion, no firm decision had been made in that regard." (Blackburn's Decl. ¶8)

Additionally, contacting all the tenants occupying the building on the effective date of the insurance policy with the information that the building would likely be deconstructed to its core cannot be understood as anything other than having contemplated structural alterations or demolition exposure. 350/Blackburn's attempt to deem the word "contemplate" to mean a "firm plan" or "firm decision" is without legal or linguistic support. "To contemplate" is neither vague nor ambiguous in the present context.

As a matter of law, Blackburn's responses to the policy application's questions concerning structural alterations or demolition exposure were misleading or false.

### B. Materiality of Misrepresentation or False Statement

350 also argues that the information about 350's plans for the building was not material. The materiality of a misrepresentation is determined by its probable and reasonable effect upon the insurer. INS. CODE, § 334. "The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law. [citation omitted] "Other cases, however, inquire into the nature of the information withheld, and the likely practice of the insurance company had the concealed facts been truthfully disclosed....' *West Coast Life Ins. Co. v. Ward*, 132 Cal. App.4th 181,187 (2005) (quoting *Old Line Life Ins. Co. v. Superior Court,* 229 Cal.App.3d 1600, 1603–1604 (1991)). The test is a subjective one; "the critical question is the effect truthful answers would have had on [the particular insurer], not on some 'average reasonable' insurer." *Imperial Casualty & Indemnity Co. v. Sogomonian*, 198 Cal. App.3d 169, 181 (1988).

Rescission may be properly granted in a summary judgment motion for the insurer where the only reasonable inference to be drawn from the undisputed evidence presented is that "the false negative answers and omissions of [the applicant] were material to [the insurer's] decision to provide insurance coverage." *Id.*, 198 Cal. App.3d at 182; *see also Lunardi v. Great–West Life Assurance Co.* 37 Cal. App.4th 807, 827 (1995).

Century contends that if the insurance application disclosed that 350/Blackburn were contemplating demolition or structural alterations or both to the building, because these are material terms of the policy, Century would have treated the application for liability insurance

differently, would have either declined the application, written different policy terms, or charged a different premium. (Decl. of Heidi Glander.)

350/Blackburn contend the declaration of Heidi Glanders, an underwriter for Century, is insufficient because it is conclusory. Glanders' declaration, however, is admissible evidence and addresses directly and with first-hand knowledge, whether as an underwriting practice, the questions at issue were material to Century's issuance of the commercial insurance policy. 350/Blackburn offer no evidence disputing the evidence that the questions were material to Century but instead suggest that a jury might not believe the uncontradicted evidence presented by Century.

In attempting to avoid rescission, 350/Blackburn also argue that Century's assertion of materiality must be discredited because Century delayed seeking rescission of the policy. There is no legal basis for finding that a claim for rescission that was timely brought is immaterial.

Finally, 350/Blackburn contend that a triable issue of fact exists as to whether Century was aware of the prior flooding in the building and of the potential need for repairs so Century could have followed up. Contrary to 350/Blackburn's argument, Century had no obligation to verify the accuracy of the applicant's representations. *Unionamerica Ins. Co. Ltd. v. The Fort Miller Group, Inc.,* 379 Fed. Appx. 598, 599 (9th Cir. 2010)("In California an insured may not 'escape the consequences of his deception by placing on the insurer the burden of investigating his verified statement.'"); *see also Robinson v. Occidental Life Ins. Co.*, 131 Cal. App.2d 581, 585 (1955) (in connection with an insurance application "[i]t was not incumbent upon [the insurer] to investigate [insured's] statements made to the examiner. It was [insured's] duty to divulge fully all he knew"].)

350/Blackburn tries to cast doubt on Century's evidence that the questions and responses in the insurance application were not material but they have not come forward with "evidentiary materials" in their response that " set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56. The undisputed evidence remains: the questions were material to Century issuing the policy. Under these circumstances, a reasonable trier of fact would be unable to find that Blackburn's responses in the insurance application were not material to Century.

### C. Conclusion

In this case, there is undisputed evidence that Blackburn provided false information in the application for insurance and the misrepresentation was material to Century's decision to issue the policy. The Court concludes, as a matter of law, that Century is entitled to rescission of the insurance policy.

## IV. Late Tender

Notwithstanding the granting of Century's motion for summary judgment on the issue of rescission, the Court alternatively and additionally concludes, as a matter of law, that 350's late tender substantially prejudiced Century entitling it to relief from liability.

California law provides relief from liability under an insurance policy if the insured's breach of notice or cooperation clauses results in substantial prejudice to the insurer. Notice and cooperation clauses "'enable the [insurer] to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to facts, material to [its] rights, to enable [it] to decide upon [its] obligations, and to protect [itself] against false claims.'" *Truck Ins. Exchange v. Unigard Ins. Co.*, 79 Cal. App.4th 966, 976 (2000)(quoting *Wood v. Allstate Ins. Co.,* 21 F.3d 741, 745, (7th Cir. 1994) quoting *Claflin v. Commonwealth Insurance Co.* (1884) 110 U.S. 81, 94–95 (1884)). In order for an insurer to be excused from its duties to defend and indemnify after an insured's breach of the cooperation clause, the insurer must show that it suffered substantial prejudice from the insured's breach. *Id.* The insurer must establish "that if the cooperation clause had not been breached there was a substantial likelihood the trier of fact [in the underlying actions] would have found in the insured's favor." *Id*.

Prejudice may be presumed, however, where it "naturally, inherently and necessarily exist[s]." *Northwestern Title Sec. Co. v. Flack*, 6 Cal. App.3d 134, 140–41(1970) (citing *Valladao v. Fireman's Fund Indem. Co.*, 13 Cal.2d 322, 333–34 (1939)). In *Valladao* and in *Purefoy v. Pac. Auto. Indem. Exch.*, 5 Cal.2d 81 (1935), the California Supreme Court held that presumed prejudice was not contrary to the requirement that an insured's failure to cooperate must substantially prejudice the insurer because "under the facts [in those cases] prejudice was established and ... a showing of prejudice was not required." *Northwestern Title*, 6 Cal. App.3d

at 141 (citing *Campbell v. Allstate Ins. Co.*, 60 Cal.2d 303, 306 (1963). "Although under some factual circumstances prejudice can exist as a matter of law,[2] such prejudice does not exist as a matter of law merely from the fact of delay alone nor can any presumption or inference of prejudice be drawn from the mere fact of delay." *Northwestern Title Security Co. v. Flack,* 6 Cal. App.3d 134, 141 (1970).

Both Century and 350/Blackburn rely on the court's grant of summary judgment to the insurer in *Earle v. State Farm Fire & Cas. Co.*, 935 F. Supp. 1076, 1081-81 (N.D. Cal. 1996). In *Earle*, the question was limited to whether the insureds were entitled to be reimbursed for their post-tender defense fees and costs when they did not tender the defense of their case until after the jury rendered a verdict.

The Earles, like 350/Blackburn here, argued that the insurer must demonstrate actual and substantial prejudice resulting from the delayed tender. But the insurer contended that "due to the delayed tender, it cannot possibly quantify the potential benefit to [the insurer] or the Earles had it been able to particpate in litigating the underlying action." *Id.*

Noting that "no California court has defined prejudice in the context of a post-trial tender," the court stated it

> recognizes that because the pre-trial and trial stages of the underlying action concluded before [the insurer] had an opportunity to participate, any attempt to demonstrate what would have happened had [the insurer] received timely tender is necessarily speculation.

*Id.*, 935 F. Supp. at 1080.

On finding that the insurer had established prejudice as a matter of law, the Court found that the insurer "presented evidence that if notice had been given earlier, the insured's exposure, as well as its own, would have been substantially reduced because (1) it would have paid its own

---

[2] In *Cybernet Ventures, Inc. v. Hartford Ins. Co. of the Midwest*, 168 Fed. Appx. 850, 852 (9th Cir. 2006), the Ninth Circuit held that an insured substantially prejudiced its insurer by failing to turn the defense of a copyright and trademark infringement action over to the insurer's appointed attorneys. The court did not analyze whether the trier of fact in the infringement action would likely have found for Cybernet, the insured, had Hartford's counsel had been accepted, but instead concluded that Cybernet's refusal in and of itself substantially prejudiced Hartford.

attorneys an hourly rate lower than that paid to insured's independent counsel; (2) it would have been allowed to seek reimbursement of fees and costs; and (3) it would have submitted a special interrogatory to the jury which was substantially likely to relieve it of the obligation to pay the judgment. *Id.*, 935 Supp. at 1082.

Century argues that the late tender here, as in *Earle,* makes it virtually impossible for it to prove it has been prejudiced without some speculation. Nevertheless, Century argues that 350/Blackburn's conduct in failing to tender prevented Century from specifically investigating the claims raised in the underlying litigation against the insured including the physical condition of the building that formed a portion of the Helleis/Flagship claims; deprived it of any opportunity to control the legal defense of the case or to negotiate a favorable settlement, particularly here, where attorneys' fees were at issue; and prevented any opportunity to settle the case for a sum less than that awarded by the judge. Century also points out that 350/Blackburn's expert in the arbitration of their legal malpractice action testified that if the Helleis/Flagship case had been timely tendered, an early settlement would have been reached: "It is more likely than not that they would have been able to settle this . . . it is far more likely than not that her settlement demands would have resulted in a settlement that was a cost savings for Century as opposed to letting the case proceed through trial." (Century Exh. J, Depo. of Clinton Thuite) Further, Century argues that it would have engaged credible experts, "which standing alone would likely have resulted in a more favorable outcome, given the fact that the lack of credibility of 350's experts in the Helleis/Flagship trial was a crucial factor in the failure of the defense, as articulated clearly by the judge in his Statement of Decision." (Motion Ps & As at 28; Exh. O to doc. #33.)

The Court finds that in addition to substantial prejudice inherently existing in the present case where defendants failed to tender until after the conclusion of the state court trial and after the completion of the deconstruction and conversion to residential use of the property, Century has provided sufficient evidence to demonstrate substantial prejudice. 350/Blackburn's breach involved a failure of notice and to cooperate resulting in a denial of Century's right to defend the underlying actions. *See Truck Ins. Exch.*, 79 Cal. App.4th at 976. The delay in presenting the

claim to Century prevented it from establishing the full extent of prejudice it suffered. Nevertheless, the Court concludes that on the record presented, Century has sufficiently established evidentiary support for finding the substantial prejudice necessary to relieve it from liability under the insurance policy because of 350/Blackburn's breach of notice and the cooperation clause. Summary judgment therefore will be granted on this alternative and additional basis.

**V.     Summary Judgment on the Counterclaims**

Because Century is entitled to rescind the policy and is not liable under the policy, defendants cannot bring a claim for breach of contract or breach of the implied covenant of good faith and fair dealing arising out of those insurance policies. *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). Nevertheless, the Court also considers Century's entitlement to summary judgment on Blackburn's and 350's counterclaims.

**A.     Blackburn's Counterclaims**

More important than whether Blackburn may procedurally file a counterclaim in an action in which he was never a defendant, is whether Blackburn has standing to assert the counterclaims and whether he has stated a legal claim against Century.

Blackburn contends Century breached the insurance contract by failing to defend and indemnify him in the *Helleis* case. But Blackburn never tendered and Century never denied or accepted a defense in the *Helleis* action for Blackburn. In defendants' separate statement of material facts in opposition to plaintiff's first motion for summary judge, Century provided material fact no. 54: "Blackburn never tendered any defense to Century Surety." Blackburn responded "Undisputed." (Doc. #37-1, at 23) But now Blackburn contends he both formally and constructively tendered his defense and indemnity under the policy by referring to counsel Michael Vivoli's July 25, 2005 letter to Cathy Zatari of Century. The letter does not address Blackburn at all. Instead, the letter references "your insured", *i.e.,* 350, and includes a request for Century to collateralize a bond so as to protect the "Insured's assets." (Doc. #266-5 at 6-7.)

In this first attempt to argue he tendered, Blackburn has provided no evidence to demonstrate that he tendered a claim for a defense or indemnity to Century. Blackburn,

therefore, has no standing to bring counterclaims for breach of contract or bad faith.

Moreover, even if Blackburn had tendered, he has provided no evidence to support his claim for breach of contract and bad faith. By the time Century received notice that there were claims against Blackburn, the trial had concluded. He was found not liable for any of the claims asserted against him in the *Helleis* case and therefore, no judgment was entered against Blackburn. Neither Blackburn nor Helleis appealed the trial court's decision. There is no legal basis for finding that Century was required to defend or indemnify Blackburn for the *Helleis* judgment which was against 350 only. Where no benefits are due, there can be no breach of the insurance contract and no basis for a claim of bad faith. *Gunderson v. Fire Ins. Exchange*, 37 Cal. App.4th 1106, 1119 (1995).

Century is entitled to summary judgment on Blackburn's counterclaims.

**B.    Counterclaimants' Contract Claims**

350 argues that Century breach the insurance contract by failing to provide independent counsel for appeal in the *Helleis* case.

California Civil Code § 2860 provides that an insurer having a duty to defend its insured must provide its insured independent counsel, commonly referred to as Cumis counsel, where a conflict of interest arises between the insurer and insured. A conflict of interest exists when "an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." CIV.CODE § 2860(b). An insured has no entitlement to *Cumis* counsel "where the coverage issue is independent of, or extrinsic to, the issues in the underlying action." *Dynamic Concepts, Inc. v. Truck Ins. Exchange*, 61 Cal. App.4th 999, 1006 (1998).

The reservation of rights in this case does not present a conflict of interest under § 2860 because the insurer's appointed appellate counsel could not control the outcome of the coverage issues. This Court previously found there was no *Cumis* conflict when it considered Century's motion for attorneys' fees:

> But the issue of whether Helleis, doing business as Flagship, was a business entity or a natural person would not and could not have been raised in an appeal of the determination of whether there was or was not a wrongful eviction. The state

>court of appeals affirmed the trial court's finding that there was a wrongful eviction. The court of appeals did not make and was not asked to make a ruling on the issue of whether Flagship was a business entity or a natural person – the issue involved in determining coverage under the policy. Accordingly, Gordon & Rees, the counsel retained by Century, was not able to control the outcome of the coverage issue in the appeal.

(Order filed September 26, 2008 at 5.)

Interestingly, 350 has not argued that appointed appellate counsel did focus the appeal entirely on the non-contractual causes of action on appeal, but instead states that "Century's appointed counsel plainly had the *ability* to develop the appellate record of the Helleis case in a manner calculated to eliminate the covered causes of action." (Opp. at 21.) But 350 has not demonstrated how counsel, post-judgment, could have influenced the factual findings of the trier of fact so as to influence unresolved coverage issues.

Because there are no disputed issues of fact concerning *Cumis* counsel, Century is entitled to summary judgment on 350's breach of contract and bad faith claims. Further, because there has been no breach of the insurance contract by Century, there can be no entitlement to damages for 350.

**VIII. Conclusion**

Based on the foregoing, **IT IS ORDERED** Century Surety's motion for summary judgment is **GRANTED**. **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in Century Surety's favor and against 350 W.A. LLC and David Blackburn.

**IT IS SO ORDERED.**

DATED: September 28, 2011

                               M. James Lorenz
                               United States District Court Judge

COPY TO:

HON. BERNARD G. SKOMAL
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL